Mr. Lunsford, whenever you are ready May it please the court, my name is Bill Lunsford, and I am here to speak on behalf of the Alabama Department of Corrections. In this case, the district court entered a sweeping, unprecedented injunction against the entirety of the Alabama Department of Corrections. And in so doing, the court ignored the mandates of the Prison Litigation Reform Act, as well as several central principles that this court has repeatedly recognized must be considered in any analysis of claims under the Eighth Amendment. Plaintiffs say that, at least to some things, you've waived a lot of the arguments, not all of them, but a lot of them because you entered into stipulations which you also told the district court that it could enter as orders. And the language that they quote is accurate, so tell me why their waiver argument isn't correct as to some parts of this case. The commissioners did not waive their arguments as it pertains to the Prison Litigation Reform Act for a number of different reasons, and we've laid this out. First of all, let me say, the plaintiffs we believe are a stop from making an argument before this court that the commissioners waived their arguments under the Prison Litigation Reform Act based solely on the arguments made to the district court by plaintiffs. As we've quoted in our brief, the plaintiffs went to the district court when this issue first arose and informed the district court that the arguments regarding needs, narrowness, intrusiveness requirements within the Prison Litigation Reform Act could not be waived, and the district court relied on plaintiffs' arguments related to non-waiver. Secondly, the plaintiffs' arguments . . . You can't waive statutory protections as a litigant? Based on the . . . You can waive constitutional rights, and you're telling me that a state cannot waive statutory benefits, protections that are provided by Congress? That's your position? Based on the personality of this court, it is not necessarily an argument to be waived, but an obligation of the underlying trial court to make the necessary findings of fact that are required under 3626A1, and so we cannot waive a requirement for a district court to make a finding. It would be . . . But you may not be able to argue that it's reversible error to rely on your stipulation to give up some of those protections. I understand that perspective, but . . . This is an adversarial system, and so there are a lot of things that district courts are required to do across all different areas of law, and some of those are self-executing. Some of them are things that district courts have to do sua sponte and the like, but whether or not the failure to do them constitutes reversible error sometimes goes hand in hand with how the case gets litigated and what a party advocates and gives up and what it agrees to and doesn't agree to, and it just seems to me . . . It's odd for me to think that you can't waive a statutory demand. Your Honor, I understand on the legal issue, our simple point is the plaintiffs are stopped here from arguing something they argued the direct opposite position in front of the district court. That's . . . Well, I would say on the second point . . . You waived, and they said they waived your waiver. Your Honor, and obviously we believe as a factual matter there was absolutely no waiver, and that the argument . . . What was that stipulation and agreement then? What did it constitute? Your Honor, as we've discussed in the brief, when the district court decided to undertake the remedial phase, the district court entered this very unusual, extraordinary procedural order that broke the case, this portion of the case, into 17, or actually initially seven, and then it turned into 22 different trials, 22 different trials. And the process before each trial was exactly the same. The parties were referred to United States Magistrate John Ott for mediation. If mediation failed, there was a brief period of discovery followed by a remedial trial if the issue was not settled. And so, as a practical matter, when we're on issue one, the commissioners could not have stipulated, could not have agreed that the stipulation met the needs and erroneous test because there was so much remaining to be decided in terms of what the remedy would be. It was unfeasible as just a practical matter to make that agreement. And this has been very clear in this court. When parties make a stipulation, the stipulation is interpreted just like a contract. And so, we were very, very clear in the process that we were negotiating individual issues at an arm's length transaction in mediation with a federal magistrate who was regularly in contact with the district court, and we submitted each of those stipulations and said, this is the agreement of the parties. None of those stipulations, none of them included the needs narrowness, intrusiveness, language. There was no agreement to that. More importantly, as I said, the district court eventually broke this into 22 trials. In the very first trial, the district court made the needs, narrowness, intrusiveness findings as to that first issue, leaving it open as to what happened to the second issue. And so, when we arrived to the second issue, we reached a stipulation. The stipulation included no language related to the PLRA, no waiver. In fact, this process very closely mirrors what generally happened in Rasho, which, you know, we've searched far and wide for a case as expansive, overreaching, intrusive as this case, and Rasho, out of Illinois, is the only case we can identify, which is simple. Is the omnibus order a final order? The reason I ask is that if it is final, the judge should have said it was final, then it's appealable under Rule 54B. And if it's not appealable under 54B, it's still in the bosom of the court, even though it's called final, and it is basically a preliminary injunction. So, that's where I am. Is it a final order? No, it is not. Before you answer, hold on. I took you way down the road of waiver for a long time. Brian, can you please give him back six minutes? Thank you, Your Honor. Your Honor, the omnibus remedial order in this case is not a final order. We submitted a Rule 28J letter in which, as we prepared for this oral argument, we discovered not only the language in the remedial order itself, which expressly says it is not a final order. Well, even if it was, it's only a partial final judgment, and so it's not appealable unless there's a certificate of need to enter a final judgment under 54B. That's correct, Your Honor. And, Your Honor— Even if it's a preliminary injunction that's evaporated after 90 days. That's correct, Your Honor. Did you ever tell the district court—and this is not just Shoflatt's question, but it's somewhat related to it—did anybody tell the district court that the 90-day period had expired? Yes. And that, therefore, you were no longer bound by it and you were not going to follow it anymore? Your Honor, there were repeated discussions after this issue came to light about the need for PLRA findings that this 90-day provision appeared in 3626A1, and that discussion did happen before the court in February of 2019. Since that time, we have not had a discussion with the district court to say we do not believe your order is final because, again, we're relying on the plain text of the order itself, which says this is not a final order. No, but my question is not about finality. That was Judge Shoflatt's question, which I think is a good one, but my question is about the expiration of the 90-day period. There have been arguments made here on appeal that all of this is moot and that the district court's remedial order that's on appeal, whatever its finality or non-finality, has evaporated and is gone under the 90-day period under the PLRA. My question is a practical one and a factual one. In all of this time, has anybody gone to the district court and said the 90-day period has expired under the PLRA? We no longer think we are bound by your remedial order. Respectfully, we are not going to follow it anymore. Has anybody told the district court that? No, you are. Why in the world not? One of the problems is the orders are not enforceable under the court's civil contempt power. You can't hold everybody in contempt for violating something that's expired. It would seem to me that they should get together with the district judge and decide what is final. If you got some isolated issues that are final, enter a final judgment, take it up 54B, but otherwise, they just expire. Can you answer the question? Which it leaves it in a terrible situation because in my view, the state, the commissioner could disregard some of these injunctive orders with impunity because they are not enforceable under the contempt power because they evaporated. Well, let me say as a practical matter, the commissioner is still abiding by this order because as we analyze the issue and Judge Jordan, I want to get back to your question is why not? Why haven't we gone to the court? This is our understanding that the mandate at this point lies with this court. The mandate as to the order lies with this court and the district court has lost jurisdiction to do anything. But you could have asked for us to relinquish jurisdiction, I guess. I'm not suggesting that you could have asked the district court to do something because of the pendency of the appeal. I'm just wondering why, as you put it, a massive remedial order like this, if the belief really is, if some of the parties have a good faith belief that the remedial order has expired under the PLRA's 90-day period because it's preliminary and not final, somebody should have gone to tell the district court that. Forget whether the district court could have taken any action about it, but somebody should have gone to say, by the way, Judge, our position on appeal is that this is gone. Out of respect to you and the process, we're going to continue abiding until the appeal is done, but we think this thing has lost its coercive force. But it just seems very odd to me that nobody would have told the district court judge that the orders that he entered are not only non-final, but that they've expired. That just seems crazy. Understood, Your Honor. But again, from a procedural perspective, we were simply following what we believed was a process, which is that the issues as to the current status of the remedial order currently rest with this court and that the only relief, the only mechanism that existed for the commissioners to obtain that relief is through this court and only this court. Right. Let's talk about your first point, which is that the district court allegedly erred by ordering, by entering remedial relief in 2021 without finding deliberate indifference to exist at that time. That's correct, Your Honor. There are two particular aspects of our first argument that relate to both a legal issue and then there's a significant timing issue that also contributes to our argument and further bolsters the fact that the district court erred by not considering the subjective state of mind of the commissioners at the time it entered the remedial order in December of 2021. As a legal matter, our argument centered squarely on Farmer v. Brennan, which this court has repeatedly relied upon as the bulwark of Eighth Amendment jurisprudence as it relates to the issue of deliberate indifference. All right. Let me ask you a question and maybe Judge Jordan will give you additional time, but obviously, I'm sure you're aware, everyone's aware probably that this court had a non-bank recently that dealt with the deliberate indifference standard under the Eighth Amendment. Do you think that at this point we need to wait for that opinion to come out or do you think that we can address this? Your Honor, I think the court can proceed with addressing this issue now based simply on the issue of under 3626A1, which was the court's failure to consider this issue of the subjective intent of the commissioners at the time of the remedial order because that case, the case out of Georgia that I'm familiar with, Your Honor, deals with the issue of really what is the definition, what level of subjective intent is required and whether the court uses the current definition or a new definition, we firmly believe that under either definition, it doesn't matter because the district court here flatly refused to consider the subjective intent of the commissioners at the time it issued the remedial order. Can I test your hypothesis a little bit? Your Honor, district court holds a bench trial in a case like this one over the course of a year, five days here, four days here, three days here, two days here. Sorry, I have a two-month criminal trial. Come back in two months, another three-week break. You do it over the course of a year. A month after the trial is over, so 13 months from the beginning of trial, district court enters findings of fact and conclusions of law and finds deliberate indifference. Assume that that finding is sufficient under the facts and under the law. The district court says to the parties, all right, brief remedy and let's have a trial on remedy, says to the plaintiffs, how much time do you need? A month. The defendants, we need two months. Okay, two months it is. Two months evidentiary hearing on remedy. Three months after that, remedy. Does the district court have to go back and now make a new finding of deliberate indifference that's beyond the one it made at the 13-month point? It's got to now redo deliberate indifference five months later again? On behalf of the commissioners, we certainly wish that was the scenario here instead of the five-year delay that actually occurred. But to answer the question, Your Honor, the answer is that that's a highly individualized determination based on the nature of the case. For example- Same cases here. Well, if it's the same case here, then certainly the major changes that were made over time couldn't be made in 13 months. And so the answer would be no in your scenario. The court wouldn't have to go back and do those things. But based on the enormous passage of time that occurred here and the enormous efforts and achievements that were made by the commissioners during those times, it was a massive error to not consider those things. But Mr. Ledford, it seems to be that at that point in time, what you're telling the district judge on the remedies hearing, things have changed since you found the deliberate indifference. And it's as if you don't need the remedy at all, for example. So in my view, that's the burden of the defendant. Unfortunately, there's a big time span. But that's an opportunity to tell the court that whatever you found three years ago or whatever it was, things have changed and should be taken into account in the remedy, which may be no remedy at all or toned down anyway. Correct, Your Honor. Your Honor, this is exactly the language you wrote in Georgia Advocacy Office, which says when you said that abusive discretion existed when a court entered an injunction that reached further than was necessary to correct the constitutional violation. That's exactly what transpired transpired exactly here and where the court erred. And again, it's a scenario where the change was so significant and there was so much of it that actually the only thing the court considered in terms of current circumstances were actually additional alleged violations, not the achievements that our clients made throughout the course of the litigation. We've taken you way over your time and given you some more time. You've got a minute to wrap up if you'd like. Your Honor, I'll simply add that in addition to the issues related to the failure to consider the subjective intent of the commissioners, the injunction itself is extraordinary and unprecedented and it reaches into every area of corrections in Alabama. Just a couple of quick examples. Number one, as we sit here today, assuming the court order is in effect, there are six Alabama facilities that are currently under federal court monitoring. Even though the plaintiffs never submitted a shred of evidence that a suicide ever occurred at any of those facilities, as we sit here today, Alabama is under an order to hire 3,826 correctional officers, which is optimal, perfect staffing. There was not a single finding ever made by the district court that if we had 3,825 officers that that was violative of the Eighth Amendment. That's why we believe, just like the Seventh Circuit concluded in Rasho, this was a massive overreach when, in a case in which the district court didn't just become a super warden over one facility, but became a super commissioner over 15 different correctional facilities. For that reason, we've requested that the court reverse and render. All right. Thank you very much. Ms. Sager. May it please the court. Joanne Sager for the plaintiffs. The district court carefully followed ADOC's lead, consistently adopting remedies that ADOC either proposed or were found in ADOC's regulations. That's why ADOC doesn't really mount a challenge to the individual provisions and their need narrowness intrusiveness in the remedial order. They're all ADOC's own recommendations. The real thrust of ADOC's appeal is one, its objection to the district court's consideration. Why didn't you ask the court to make the omnibus order a final judgment, in which case the other side has got petitioned the court for leave to appeal it under 54B. If they don't do that, it's final and it's enforceable by the court's contempt power. That's how it should have been. Yes, Your Honor. That is how it was. The words that the district court used at the end of the remedial opinion, where it said that the order was not final, the finality issue that the district court was referring to is final within the sense of, and I will never reconsider the provisions. Well, there's two kinds of finals. There's a final under the act and there's a final for jurisdictional purposes. Exactly, Your Honor. So this is final under the act in the sense that it's not a preliminary injunction. The district court specifically rejected the argument that ADOC made that it was a preliminary injunction. The district court said, no, this is not a preliminary injunction. But because I have such deference for ADOC and for the officials and how they want to run their system, what I will say is if they ever want to come back here and explain to me that one of these provisions- I suppose that tomorrow, the commissioner could go back to the district court and say, make this order final and then take it up. So, Your Honor, the order is final and the commissioners, they purported to appeal under 1292, which permits the appeal of any injunctive relief. And so that was the issue. You still have the problem of a lot of claims down there and under 1291, we can't take it. So, Your Honor, I would say that the difference between what you're urging, which is a 54B certification and 1292, which is the authority that the commissioners have appealed under, is just the difference between whether the entire case up to the point of  injunction is the full court. Well, but you have a different standard of review also. When you're reviewing a final judgment, it's a different standard than under 1292. Yes, Your Honor. So, right now, we're here under 1292. It's just injunctive relief in the middle of a case. It's not the entire case- And it's preliminary. But if it's injunctive relief in the middle of the case, that sort of jars against the notion of finality. So, it does- Answer this for me. How much more, in terms of claims, are left in this case? With respect to the counts in the complaint that refer to an Eighth Amendment violation, nothing. No, no, no, no, no, no. The complaint. So, there are claims in the complaint that have not yet been addressed. You can't cut a complaint up that way. So, how much finality to try to make this somewhat simple in a very complicated case. Finality is a case as a whole concept, right? Except for statutorily designated islands like injunctive relief. So, how much of this case is left? So, Your Honor, there are counts in the complaint that have not yet been addressed. There are certain claims with respect to dental care and medical care that have not yet been addressed. The- How can that be final? What you're essentially saying is that, maybe you're right, that if there is a multi-count complaint, all of them asking for bench trials and not jury trials, and a judge has a jury trial on count three, leaves all the other counts for later, holds a trial, enters permanent injunctive relief, but only asks to that count, that's final. Yes, Your Honor. So, maybe- What supports that proposition? Sorry, Your Honor? What supports that proposition? What supports that proposition is that, you know, there can be multiple counts in a complaint that do not have anything to do with one another, and the court can take count by count. So, imagine a complaint that- Sure, if it certifies. That's why we allow the cert- that's why Congress allows a certification process. So, if the district court wants to send up a portion, it does so through a regulated process. That's true, Your Honor, and I think one that- So, if you have a five-count complaint, you would have five final appeals. Every time the district court takes a count and tries it, and issues permanent injunctive relief, you've got an appeal. I think, Your Honor, if the defendant or any party wanted to get certification of a particular count of the complaint, which everything was done- Oh, without certification. You would not be able to appeal unless it was an injunctive relief, which is what- It is injunctive relief, but that is preliminary. Right, but he's saying if there's five counts in a complaint- If it's injunctive relief, it's still preliminary. You still have- you have the whole case down there. The court has everything in its bosom. The injunction is preliminary, because it could change its mind. No, Your Honor, it's not the case that every injunction that's entered before the court disposes of the entire- What I'm saying is for- Preliminary. If you're going to take it up under 1292B, I speak for myself, it's a preliminary injunction, because we don't entertain permanent injunctions, final judgments under 1292. You do it under 1291, or maybe you've got a Cohen problem. There's no Cohen problem here. Perhaps it might be helpful, Your Honor, to look at the rest of 1292B, so you'll notice- For the judge in this case, I speak for myself as an old trial judge, you take a complicated case like this, and if you could sever out parts independently, you try them and enter judgment, and you take it up the other side under 54B, and you still have these other claims. One by one, if you can try those independently, and they're unrelated, and there are some unrelated issues in this case, do you agree with that? Yes, Your Honor. I agree that there are unrelated issues in this case. So what I don't agree with that Your Honor is saying is that injunctive relief that's entered before the conclusion of every count in the complaint is necessarily preliminary. There can be- As long as a district court has jurisdiction of the case, every interlocutory order is subject to review in the district court. Yes, Your Honor. In other words, the district court can't enter a final, final judgment on the complaint until it disposes of everything in the complaint, and if it does, as Judge Choflat suggested, to take discrete pieces out, try them separately, and enter judgments on those, the way to get those up is through Rule 54B. To the extent that you're arguing, Your Honor, that this court doesn't have jurisdiction- I don't argue. We don't argue. To the extent that you're asking me whether the court lacks jurisdiction over this piece of the appeal because ADOC failed to seek 54B certification, we agree that the lack of a 54B certification means that the court can't reach orders other than the remedial order. That 54B certification would have permitted the entire course of conduct and all of the orders that were entered. No, no, no. 54B only brings what's covered by the final judgment. Yes, Your Honor. That was what I was about to say. So everything would have merged into the remedial order and- You have an institutional problem, which is until there is a final judgment, you either bring them up under 54B and that part of the case is gone, and then you try the rest of the case. And if you don't do that, then everything is interlocutory and everything is subject to change by the district court. It can change its mind. I agree, Your Honor. The court- Including this omnibus order could still change its mind. I agree, Your Honor. The district court is able to change the omnibus remedial order- Well, because the facts change. Sure, Your Honor. And if I may complete my answer, the district court is able to make modifications to the remedial order. It was referring to- But it seems to me the lawyers on both sides need to educate the district court a little bit about carving out issues that can be appealed or disposed of with a final judgment. Your Honor, the one disagreement I have with what you've said is the statement that the order- It's been going on since 2014, isn't it? Or 15. The complaint was filed in 2014, yes, Your Honor. The one disagreement that I have with what Your Honor has suggested is that the remedial order automatically became unenforceable after 90 days. The section of the PLRA that discusses when something is a preliminary- was ordered as preliminary relief versus when it's final relief focuses on whether the district court has finalized the nearness intrusiveness finding, which it has done in this case. So, there's nothing else to be done. Those are different concepts, right? Whether or not this is preliminary in the PLRA 90-day sense- Yes. Is a different legal question than whether or not the district court's remedial order is final for appealability purposes. I agree, Your Honor. I have no dispute with that statement. The only thing that I would urge you to recognize in discussing that issue is to say that there is a difference between preliminary for PLRA purposes and preliminary in the sense of the case is not resolved. These orders are not preliminary in the sense that after 90 days, they expired. The district court did what it had to do under the statute to make sure that they would not expire after 90 days. You haven't gotten a chance to discuss anything merits-based, so- No, Your Honor. I have not. We'll give you a little bit more time, too. Can you please give her eight more minutes? Your Honor, the first thing that I'd like to start with is the waiver argument that we make. As you pointed out, Judge Jordan, ADOC did come to the court and ask for the stipulated orders to be enforceable. And if you'll look at the statute- When was that? That was in 2018. All of those stipulations carry forward all the way through with no time erosion or anything else? No, Your Honor. We would say that the clock stopped when ADOC came to the court and said, we think that these orders don't comply with the PLRA. Please reopen all of them. We would like to have a new trial. We think the clock stopped then, and the stipulated orders stopped being enforceable at that point. So to the extent that the court rules for us and decides to reverse to the extent that the remedial orders are inconsistent with the stipulated orders, we still have at least a year on the clock with respect to all of those orders. Can you explain? I don't understand. Yes, Your Honor. So the liability opinion issued in 2017, the parties then went to mediation to try and resolve this issue. Through the course of these mediations, the parties were able to resolve a series of issues, came to the court with stipulated orders and said, we think that this resolves the issue of coding. Please enter this as enforceable against us. The district court then examined these various orders before the parties and asked them about what they meant, how they would interact with other orders the district court had ordered, and then said, yes, OK, I will make them enforceable. And at that point, each one of those orders became an enforceable order under the PLRA as final relief, permanent relief under the PLRA. Some time passed as the parties were going through this process, and then one day ADOC decided to repudiate its prior agreement to these orders, and the district court decided to allow ADOC to repudiate its prior agreement. When the district court did that, it stopped the clock. It's not as though these stipulated orders remained in effect after the district court said, no, plaintiffs, I'm rejecting your waiver argument, and I'm going to allow ADOC to retry this case. So it wasn't the case that the stipulated orders, which had come into effect in 2018, just carried on. They stopped being in effect in 2019. Why do they matter? They matter, Your Honor, because this court has held, and United States v. Campbell en banc with Judge Choklat writing, that it's an abuse of discretion to excuse a deliberate waiver. And this was a deliberate waiver. But if the waiver is only time limited? Oh, no, Your Honor. I'm sorry if I represented that the waiver is time limited. The waiver is not time limited. The time that I was referring to is the clock in the PLRA that refers to termination when an order is terminable. I'm just trying to figure out. So what you're arguing, or what you're saying, is that the stipulated orders, at some point, for lack of a better word, they became null? Yes, Your Honor. Essentially, the district court hit pause on them. And for the district court's purposes, the district court vacated them. Pause on them, or just vacated them? Vacated them. The district court vacated them. So it's as if nothing happened? Yes, Your Honor. And we're here on appeal saying it's— They can't be held to whatever the stipulations were because they are no longer in existence? Yes, Your Honor. And the district court isn't holding them to those stipulations. What we're here on cross-appeal is asking for that. Why do they matter? They matter, Your Honor, because they offered substantially greater relief than what is in the remedial order. And we would like that relief reinstated. So we've crossed the field to get that relief back. But they were vacated. I'm having trouble understanding. There are so many orders. And this doesn't make any sense to me, how you can be asking for relief from an order that is vacated. I mean, it's gone. So, Your Honor, the way that the district court vacated the stipulated orders was by replacing them with the remedial order. So the stipulated orders existed. The district court then permitted ADOC to— I understand that, but then— But, OK, so this is the stipulated order. Yes, Your Honor. That order is now vacated. And in its place is another order. Yes, Your Honor. The order that we should be focusing on, at least from my perspective, is this order. This order is gone. It's done. Except you're cross-appealing. Our cross-appeal alleges that the district court erred when it put down the stipulated order. And so our cross-appeal position is that ADOC had waived those arguments. It was abuse of discretion for the district court to vacate the stipulated orders. So if you were to vacate the remedial order on our cross-appeal, the result would be that the stipulated orders came into effect. If we reject your waiver argument on your cross-appeal, then the only order we're reviewing is the remedial order. Yes, Your Honor, is the remedial order. And with respect to the remedial order, if you set aside our cross-appeal issue, we think it's clear that the district court did not abuse its discretion in entering the relief that was in the remedial order. Tell me about the first merits-based argument that the commissioners make, which is that the district court in 2021 should have re-examined deliberate indifference again, given the . . . I certainly have not taken a dive into this record, so I don't know what it shows or doesn't show. But the argument is that there had been a number of changes made since 2017, and that as a result, deliberate indifference needed to be re-examined again. Tell me why the commissioners are wrong in that sense. Yes, Your Honor, I have several answers to that. The first one will be a record answer. I commend to you Appendix Volume 14, Tab 83, page 29. That's part of the remedial opinion here. That's part two. And there, the district court explains what it did with ADOC's request to consider the length of time and the change in conditions. Can you say that again? Yes, it's Appendix Volume 14, Tab 83, pages 29 to 30, and Note 2 that's associated with that. So the plaintiffs had argued below that the district court did not need to consider evidence of how things had changed after the liability opinion, and the district court rejected plaintiff's argument there and said, no, I will consider. I'm sitting here issuing an injunction as a court of equity, and at equity, I have an obligation to consider current conditions. I'd recommend the court swift. I would recommend reading RUFO. In those situations, defendants are able to disprove the need for a continued injunction. And so the district court said, I will consider current conditions. And the way I'm going to consider it is I'm going to consider it as part of the PLRA's need, narrowness, intrusiveness analysis. To the extent that any given provision that the parties have advocated for is no longer necessary in light of current conditions, I won't order it. And as you'll see throughout the remedial opinion, the district court says that time and time again. I'm not ordering this. It's no longer necessary. I've seen the evidence that ADOC has put on, and I've decided it's not necessary. I won't do it. So the district court did consider changed conditions and the length of time. The real dispute between the parties on ADOC's first argument is who bears the burden of proof. ADOC is arguing that it wanted the plaintiffs to reprove liability at the remedial phase. We didn't have that obligation. That's not an obligation that's required in any of the cases that ADOC cites. But what the cases do say is that it's always possible, always possible for a defendant to come to the court and say an injunction should not issue because circumstances have changed. I will prove that I'm no longer deliberately indifferent. ADOC didn't want to put forward its own case on liability. And that's the complaint that's happening here. In your view, what did ADOC present to the district court? Didn't it present purported evidence of the changes? It presented evidence that went not to the subjective part of the test, but to the objective part of the test, what was necessary and what the current conditions of the facilities were. But ADOC didn't, for example, get up and put on evidence of how the subjective analysis had changed. And if it had wanted to, if it had wanted to shoulder that burden of proof, plaintiffs wouldn't have stopped them. We all want the same things, which is a functioning system. So if the defendants want to bear their burden of proof and prove that, they can try. But what they want instead is to force plaintiffs to bear the burden of proof on that, which under the PLRA, we don't have the burden to prove until two years after orders have been in effect. So that's the tension on ADOC's first argument. The other thing that I would note, Your Honor, is that ordinary mootness principles apply too. So it could go under Rule 60B. It could go under mootness. It's just that under all of these cases, Farmer, Note 9, they all reference the defendant bearing the burden of proof on that. So that argument between the parties is ultimately about the burden of proof. And the district court did consider it as appropriate in the circumstances under the current conditions analysis for need, narrowness, intrusiveness. All right. Thank you very much. We've taken you over your time, and I gave you a little bit of extra time. You've done a good job, and so has Mr. Lunford. No, not yet, Mr. Lunford. Ms. Filo. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Elisa Filo for the United States as amicus. I plan to focus my time today on the timing of the deliberate indifference finding, unless Your Honors have questions about the propriety of system-wide relief. And I'll jump into Farmer v. Brennan as a background principle, since my colleague for ADOC relies heavily on it. The Supreme Court in Farmer v. Brennan makes clear that plaintiffs alleging an Eighth Amendment violation can seek injunctive relief, not just for harm occurring currently, but to forestall a risk of future harm, specifically a substantial risk of serious harm. And the Court goes through the phases of litigation and what that looks like, so at the complaint, at the summary judgment, and then critically for our purposes, to establish eligibility for an injunction. To establish eligibility for an injunction, plaintiffs have to prove, and the Court has to find, a harm that continues, a substantial risk of serious harm into the future to warrant prospective relief. That is what the plaintiffs proved, and that is what the Court found at the liability phase. Thereafter, the question shifted from the propriety of injunctive relief to the scope of relief and its compliance with the PLRA. But the plaintiff didn't have to re-prove deliberate indifference thereafter. As my colleague mentioned, the defendants maintained the route of showing that injunctive relief is unnecessary through the usual mechanism of showing mootness, that's Farmer Note 9. But it wasn't the plaintiff's burden to again prove what they had already proven, that they were entitled to injunctive relief. Then, looking at the PLRA, as I mentioned, the question shifts from the plaintiff's entitlement to an injunction to the scope and its compliance with the PLRA. The PLRA itself does not require plaintiffs to prove a current and ongoing violation. It does not add that to the background jurisdictional principles. This Court has so held in Thomas v. Bryant, which is binding precedent, that the current and ongoing inquiry, which is a very specific term in the PLRA context, as this Court found in Kaysen, that's left to the termination of relief. It's not at the entry of relief. The Fourth Circuit in Porter v. Clark in 2019, when it agreed with this Court, explicitly agreed with this Court, explained why the text mandates that result. 3626A.1, about the entry of relief, has one requirement, that the relief meet the need, narrowness, and intrusiveness criteria. Section 3626B.3 has two requirements, that the Court find that it is current and ongoing violation, and that it meets the need, narrowness, intrusiveness criteria. And the Fourth Circuit explained that the omission of the current and ongoing language in 3626A.1 has to be given effect, and defendants can't smuggle that requirement into the necessary to correct a violation language, because that would render that same language redundant in 3626B.3. And this makes sense from a policy point of view. These cases are complicated. They're fact-intensive. They are often bifurcated between liability and remedial phases. Sometimes to try to encourage mediation, you see that in Thomas v. Bryant. And the defendant's kind of unknown deadline, at which point the liability findings would become stale, would impede that, both the district court's own management of the docket, as well as mediation efforts, because plaintiffs would be disincentivized to engage in mediation if the liability findings are going to expire at some unknown point, and defendants would be encouraged to drag their feet, hoping to hit that unknown deadline when they can restart these proceedings. At what point in the continuum has time passed to such a degree that you've got to go back? Is there never a point in the continuum where you have to go back? There are multiple mechanisms in that continuum of time for defendants to argue that circumstances have changed. I believe my colleague mentioned this. There's in the need, nearness, intrusiveness inquiry, as the district court did here as a matter of inquiry. The court looked to the changed circumstances, the circumstances on the ground. But the defendants could also argue for relief under 60B, a 60B motion. They could always argue that the whole case is moot. They could argue, and they could move for termination, which defendants did here before they withdrew, which would kickstart that requirement that the plaintiffs prove current and ongoing. But the plaintiffs don't have to reprove deliberate indifference. And I would suggest that in this case, it wasn't a matter of unwarranted delay. If you look at the record, plaintiffs and the district court and defendants worked diligently to try and get this into place. And it was in 2019 when defendants argued that the PLRA wasn't met, that kind of reset proceedings. If I may just finish summarizing the time. So in 2019, defendants argued that the stipulations didn't comply with the PLRA. And at that point, you have efforts to mediate, which we talked about, as well as this once in a lifetime pandemic, which delayed things. And then the defendant's motion to terminate, which kickstarted a separate process and further delayed proceedings. So there was a span of time in between, but it's not plaintiff's burden to reprove the deliberate indifference they had already proven. All right. Thank you very much. Many thanks. I would like to briefly address three things that were brought up in the arguments of my colleagues. First is this issue of a final order. I think there's additional points that the court should consider. It's an analysis. The first is that the plaintiffs have not treated the omnibus remedior as a final order, given the length of this case, I'm sure. If it's not final, you should just toss this. Understood. Your Honor, I agree. That means you go back and you're still under the injunction until you get a Rules 54 certification. Well, Your Honor, if it goes back in the court rules, it doesn't have jurisdiction. We would certainly argue that the 90 days has elapsed and therefore the order is no longer effective. It's not our business. I understand. You're saying now that the appeal you took was from a non-final order and that we don't have jurisdiction. Is that what you're saying now? That's what our Rule 28J letter said. Yes, sir. That we believe it's a non-final order. I want to confirm. Yes, sir. You're telling me now. Yes, sir. You want us to dismiss your appeal? As moot. Yes, based on... No, no, no, no, no. That's a very different thing. Mootness because of the expiration of the PLRA's 90-day period is a different matter altogether than saying that that order is not final for appealability purposes. It would be lack of jurisdiction versus mootness. Right. So which of the two is it? It would be lack of jurisdiction, Your Honor. That's correct. So you want us to dismiss your appeal on the ground that you took an appeal from a non-final order and therefore we have no jurisdiction to entertain the appeal? Even if it was final, we wouldn't have jurisdiction because there are still claims down there. That's correct. That's correct. And to the point that you're raising about it not disposing of all the issues, even the remedial order itself leaves issues open. And I know that hasn't been discussed in detail. There are numerous different things inside the remedial... and have a little brain session and say, Your Honor, this case is in pieces and we'd like to end certain pieces in this case. No summary judgment, never have a summary judgment in a case where there's a bench trial. The judges try it as a bench trial. Then our final judgment, 54B and up it comes. It's pure and simple and have an easy record. And we certainly advocated for a short and simple remedial process in September of 2017 in which the commissioner said there should be one trial and we should resolve all these issues at one time. And the district court expressly rejected that. Okay, well, but let's get back to what you're asking us to do here. So I want to make sure you understand at least one of the ways that this monster could play out. You ask us to dismiss because you've taken an appeal from a non-final order. Okay, we dismiss for lack of appellate jurisdiction, goes back down. Your first point is you're going to go to the district judge and say, Hey, you entered preliminary injunctive relief, PLRA 90 days, this is out. District judge says you're wrong. And to the extent that there was any doubt, I'm explicitly making this a permanent injunction in a final order. And here's your rule 54B certification. And you're going to be back up here in a year, year and a half, or whatever it is with the same briefs on the same issues, doing the same thing all over again. You understand that's the way this may play out. Yes, sir. Okay, and you want us to dismiss your appeal because you took an appeal from a non-final order and we lack appellate jurisdiction. Your Honor, I'm not sure how to resolve the once in the jurisdictional issue. The jurisdictional is what it is. And we felt duty bound to raise that with the court in terms of once. It's a little, it's crazy. Well, in terms of once, Your Honor, to be clear, we- You took an appeal from an order that you thought was appealable. I hope somebody believed it was appealable because if not, we wouldn't have all this. And now all of a sudden it's like, nah, not appealable, non-final. All this paper, wasted. We made a mistake or somebody made a mistake. That's what you want us to do. Well, certainly the plaintiffs agreed with us as they appealed as well. So it was certainly not the- They cross-appealed when you took an appeal. If you hadn't appealed, they wouldn't have appealed. If I were the district judge, I would want something that I could enforce with a civil contempt power. The plaintiff comes in and says, judge, they're not doing this, that, and the other thing. So what I'm going to, what I'd do is I'd have a bench trial on the issue, pick up what I've decided beforehand, incorporate it all in our final judgment. You can take it up under 54B and if you don't, it's enforceable under the civil contempt power because it is final under the PLORA. And that's exactly- You see what I mean? Yes, sir. So that the court has control. Well, and let me briefly, if I may, discuss the two remaining issues because I think we have some errors on argument that I want to correct. The first is procedurally there's been a bit of misguidance related to the process of the entry of the stipulations. The commissioners did not, quote, raise the issue of PLORA needs and erroneous requirements. What occurred was there was a series of these 22 hearings and then February 7th, 2019, there was a status conference and the court requested of the plaintiff's counsel and of me, do I need to make PLRA findings on these stipulations? And I've reported to the court I would need to consult with the client and we reported back, yes, your honor, you do. We don't agree these meet the needs and erroneous tests just like the Illinois Department of Corrections did. Well, you have to make the findings, make it appealable, reviewable. Correct. Yeah. That's correct. And so after that hearing and when the district court realized that it would in fact need to have a hearing, there was a grand bargain. And the grand bargain was this. The grand bargain was the court would go ahead and enter the orders as preliminary orders. We would make a temporary concession that we would comply with the orders, but that concession would never be used against us. That's really meaningless. From a legal point of view, it's meaningless. We'll comply. There's nothing to comply with. Correct. And we said it would never be used against us only to have it on appeal. That is why you get the district judge and that's the whole congressional intent is to get these claims in a final position where they can be reviewed. In most of these cases, it's just one preliminary injunction that covers everything. And of course, this case is too big. So you have to divide it up. Agreed, Your Honor. In some ways, and what the remedial order and the remedial trial ultimately proved is that it could be done. There could be one proceeding in which all this could have been wrapped up much more efficiently if the district court had followed the commissioner's request in September of 2017. Or 2016. Just so that you know what's coming down the road. If you succeed on your argument below that the 90-day PLRA period has run and what the district court was essentially issue a preliminary injunction which is now evaporated, the district judge given the findings he's made already and the remedial order he's entered is likely to do one of two things, I predict. He is likely to say, okay, I'm entering the same order again. It's a preliminary injunction. Got another 90 days to run. Or he makes the requisite findings of the PLRA to keep it going. Or he converts it as Jachoflat has suggested into an express permanent injunction which makes this part of the case final and gives you a Rule 54B certification. I think what you're trying to do is get down to the district court argue the 90-day PLRA thing and get the whole thing evaporated that way and then you're back to square one. But I'm suggesting to you that may not happen. And I just want to make sure you go down there with your eyes open. I speak only for myself as a predictor of things to come. Let me say this issue came up in Georgia advocacy and the court analyzed what it should do and whether it should provide instructions. And we continue to believe that this case is different than Georgia advocacy because the district court has repeatedly refused to conduct a full analysis on the constitutional violations. That's a merits point, a jurisdictional point. I understand. But in Georgia advocacy, that issue was contemplated. It can still be reviewable. Correct. And to the extent, let me correct my colleague from the United States because I think one thing was drastically misstated because here is the error, the fundamental error. It comes from one sentence in Farmer versus Brennan in which the court said, to correct my colleague from Plaintiffs, Farmer clearly said, it is the plaintiff's burden. And Farmer said this. There are four stages. We're fully familiar with Farmer. Yes, sir. But the court said that at the time that the court finds eligibility for an injunction, that subjective intent must be demonstrated. You can go ahead and finish, Mr. Lunsford. And so, again, we understand, obviously, the implications. We did believe that based on the law and the facts here, that we were duty bound to raise the issue with the court and notify the court. And I appreciate the court's time. All right. Thank you all very much.